# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kedecia Manna, d/b/a 9th and      :
Lloyd Inspections      :
     :
          v.      :    No. 230 C.D. 2023
     :    Submitted: July 5, 2024
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
Bureau of Motor Vehicles,      :
          Appellant      :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: **November 21, 2024**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department) appeals from the Court of Common Pleas of Delaware County's (trial court) Order docketed February 6, 2023, that, upon reconsideration, sustained the appeal of Kedecia Manna (Manna), d/b/a 9th and Lloyd Inspections (Station), from the Department's suspension of the Station's Certificate of Appointment as an Official Emission Inspection Station (Emissions Certificate) and rescinded the suspension.[1] On appeal, the Department argues the trial court erred and/or abused its discretion in granting reconsideration and in finding that Manna is not responsible for the violation of the Department's

---

[1] On October 31, 2024, the Department filed a Motion for Leave to File Praecipe to Withdraw Appeal (Motion to Withdraw). Manna subsequently filed an answer opposing the Motion to Withdraw. Upon consideration of the Motion to Withdraw and the answer thereto, we deny the Motion to Withdraw.

regulations by one of the Station's former employees. Upon careful review, we affirm.

## I. BACKGROUND

Manna, proceeding pro se before this Court, operates the Station at 1033 W. 9th Street, Chester, Pennsylvania. Relevantly, the Department issued an Order of Suspension (Suspension Order) to Manna, as summarized below, following a December 11, 2018 audit of the Station conducted by Quality Assurance Officer Thomas Bishop (QAO), an employee of Parsons Corporation (Parsons). The Department contracts with Parsons to perform investigative and administrative audits of inspection stations to ensure their compliance with the Vehicle Code, 75 Pa.C.S. §§ 101-9701, and the Department's regulations.

On May 3, 2019, the Department issued Manna the Suspension Order, stating that the Station's Emissions Certificate would be suspended for one year for furnishing, lending, giving, selling, or receiving a certificate of emission inspection without inspection, and one consecutive year for fraudulent record keeping. (Reproduced Record (R.R.) at 10a-11a.) The Suspension Order imposed two $2,500.00 fines, one for each violation. (*Id.* at 10a.) Manna appealed and requested supersedeas, which the trial court granted pending disposition of the appeal.

The trial court held a hearing on April 22, 2021, at which the Department called the QAO, who was admitted as an expert in vehicle emission and safety inspections. (*Id.* at 15a.) The QAO explained that he conducted a December 11, 2018 investigative audit of the Station because the Department's records showed that there were "mismatches" in vehicle identification numbers (VIN) upon inspection. (Trial Ct. February 3, 2023 Findings of Fact (FOF) ¶ 15.) He explained that when a vehicle is undergoing an emissions inspection, the vehicle is plugged

into a computer (analyzer), which reads the VIN. (*Id.* ¶¶ 16, 19, 32.) In addition, the employee inputs the VIN into the computer system manually. (*Id.* ¶¶ 20, 33.) In September 2018, there were apparently numerous instances when the manually inputted VIN number did not match the VIN number registered by the analyzer. (*Id.* ¶ 21.) This meant, to the QAO, that the vehicles that were attached to the computer were not the same vehicles that were being inspected. (*Id.* ¶ 24.) The QAO testified that inspections were conducted under another employee's license number, not Manna's. (*Id.* ¶ 21.) Manna informed the QAO that the employee was discharged for reasons unrelated to the mismatches and that Manna had no knowledge of the employee's actions. (*Id.* ¶ 27.) The QAO indicated he had previously visited the Station on September 18, 2018, for an inspection and was not advised of any issues with the VINs for the analyzer, and he did not check to see if the employee was a licensed mechanic certified inspector because the employee was not present on that day. (*Id.* ¶¶ 36-38.)

Following this hearing, the trial court initially denied Manna's appeal by order dated December 30, 2021. (R.R. at 63a.) Manna filed a motion for reconsideration, raising due process violations that became more apparent after QAO's testimony regarding what was presented and not presented to Manna, what the Department retained following the audit rather than returned to Manna, and how the inspection should have occurred and could not, according to Manna, given the limitations of the analyzer at issue to hold information. (*Id.* at 78a-82a.) Manna also asserted that there was newly discovered evidence that had been unavailable prior to the hearing reflecting a high probability that the analyzers were faulty and prone to mismatches, including a cell phone video showing an analyzer at the Station giving a false

mismatch.[2]  (*Id.* at 82a-84a.)  The Department filed an answer, denying the allegations and arguing reconsideration should be denied.  (*Id.* at 93a-102a.)  The trial court granted reconsideration by order dated January 27, 2022, in order to substantively review the reconsideration motion, which it later granted following argument.  (*Id.* at 104a, 144a, 195a.)

At a subsequent hearing held on September 29, 2022, the trial court allowed Manna to testify and provide evidence that the then-emissions analyzers routinely malfunctioned.  Manna stated that the QAO was aware that the analyzer would not power up during his September 18, 2018 investigation and, therefore, could not confirm whether there were, in fact, mismatches.  (FOF ¶¶ 45-49.)  Although Manna fixed the analyzer and was able to resume inspections, the QAO did not immediately return to confirm if the mismatches were related to the malfunctioning analyzer.  (*Id.* ¶¶ 52-54.)  Instead, the QAO did not return to investigate the alleged September violation until December 11, 2018, but, Manna testified, the old analyzers retained information for only 45 days.  (*Id.* ¶¶ 55-60.)  Because the December 11, 2018 audit occurred more than 45 days after the emissions inspections at issue, there was no way the evidence from the analyzer could be retrieved to defend against the alleged violations from September.  (*Id.* ¶¶ 61-63.)  Manna noted that the QAO had testified in other cases about the test that had to be performed to investigate this type of complaint but, because of the delay in the QAO's return, there was no way for the QAO to perform that test.  (*Id.* ¶ 60.)  Manna observed that the Department required all emissions stations to purchase new analyzers because of malfunctioning issues, and those analyzers kept data for a year.  (*Id.* ¶ 64; R.R. at 188a-89a.)  Manna

---

[2] Manna also filed an appeal with the Superior Court, *Manna v. Commonwealth* (Pa. Super., No. 375 EDA 2022, dismissed April 6, 2022), which was ultimately dismissed on procedural grounds in April 2022.

indicated the employee who had performed the emissions tests with the alleged mismatches was discharged in October 2018 for performance issues unrelated to these allegations. (FOF ¶¶ 65-67.) Manna contended that the allegations of mismatches were not mentioned during the QAO's September 18, 2018 investigation, when Manna could have searched camera footage and questioned the employee at that time, and Manna did not become aware thereof until December 2018. (*Id.* ¶¶ 72-73.) Manna further testified to not receiving the QAO's audit findings until March 26, 2019, which is when the Department held a hearing. (*Id.* ¶ 74.)

At this second hearing, the QAO did not testify, and the Department presented no evidence. (*Id.* ¶¶ 75-76.)

Upon consideration of the evidence before it, the trial court credited Manna's testimony. (*Id.* ¶ 81.) The trial court found that Manna had no knowledge of the employee's violation, which allowed it to alter the penalty imposed by the Department. (*Id.* ¶¶ 82, 84-85, 87 (citing *McCarthy v. Dep't of Transp.*, 7 A.3d 346 (Pa. Cmwlth. 2010); *Strickland v. Dep't of Transp.*, 574 A.2d 110 (Pa. Cmwlth. 1990); *Dep't of Transp., Bureau of Traffic Safety v. Antram*, 409 A.2d 492 (Pa. Cmwlth. 1979)).) Therefore, the trial court sustained Manna's appeal of the Suspension Order and directed reinstatement of the Station's Emissions Certificate.

The Department appealed and, at the direction of the trial court, filed a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b), Pa.R.A.P. 1925(b) (1925(b) Statement). Therein, the Department asserted the trial court abused its discretion in granting reconsideration and erred in sustaining Manna's appeal based on Manna's lack of knowledge, explaining what had occurred during the litigation. (R.R. at

5

218a-20a.) In addition to asserting that none of the newly discovered evidence had been unavailable, the Department claimed its witnesses were not available on the date of the second hearing. (*Id.* at 219a.)

The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) (1925(a) Opinion),[3] first explaining that the 1925(b) Statement did not comply with Pa.R.A.P. 1925(b) as it was "not concise nor [did] it clearly set forth the errors on appeal," but, rather, "provide[d] an alleged recitation of what happened during the litigation." (*Id.* at 234a.) Therefore, the trial court held that the Department waived any issues it sought to raise on appeal and, even if it had not, it would not be entitled to relief. The trial court then set forth its reasoning as to why it neither abused its discretion nor erred as a matter of law by granting reconsideration, sustaining Manna's appeal, and reinstating the Station's Emissions Certificate.

On the issue of reconsideration, the grant of which the trial court noted was in its sound discretion, the trial court held that Manna had presented numerous reasons for reconsideration, including newly discovered evidence and due process violations, the first of which is the only reason addressed by the Department. The trial court pointed to new evidence, unavailable before, that suggested that the analyzers used at the time of the alleged mismatch violations tended to identify mismatches inaccurately. (*Id.* at 236a.) It also cited Manna's denial of due process claim, particularly that Manna did not have a full opportunity to be heard because specific details regarding the allegations were not provided until just before the initial hearing. The trial court observed, on this topic, that it could only speculate as to what charges were alleged against the Station because the Suspension Order was unclear as to what substantive provisions were violated and the audit report cited in

---

[3] The 1925(a) Opinion begins on page 222a of the Reproduced Record.

the Suspension Order did not actually check off any violations. (*Id.* at 237a-39a.) The trial court held that it was not until the 1925(b) Statement that the Department identified sections of its regulations that were allegedly violated. Thus, the trial court found there was a lack of notice, leaving it to speculate as to what violations occurred, and this resulted in a violation of due process. (*Id.* at 239a-40a (citing, e.g., *Dunn v. Dep't of Transp., Bureau of Driver Licensing*, 819 A.2d 189 (Pa. Cmwlth. 2003)).) The trial court also found that Manna had not received the Department's actual findings until March 26, 2019, in violation of the Department's regulation at 67 Pa. Code § 177.651, which requires written notice of any alleged violation within three days. Ultimately, the trial court found Manna credible and that the evidence presented at the September 2022 hearing gave "a more complete picture as to the events that occurred between the time period of September 2018 and December 2018 in this matter" and that it was more likely than not, that the alleged mismatches were the result of the faulty analyzer. (*Id.* at 241a.) As for the Department's claim that its witnesses were unavailable, the trial court indicated the record was devoid of any mention of this assertion prior to the 1925(b) Statement. (*Id.* at 241a-42a.)

The trial court further held, citing its previous discussion, that the Department failed to establish, by a preponderance of the evidence, that the Station violated any provision of the Vehicle Code or the Department's regulations so as to support a suspension of the Emissions Certificate. It explained, as it had in its initial opinion, that courts of common pleas have the authority to alter the Department's penalty if different facts are found by the court, which occurred here. (*Id.* at 242a-44a.) In light of the credited evidence, the trial court held the suspension was "against the

weight of the evidence and contrary to law" and its reinstatement of the Station's Emissions Certificate was proper. (*Id.* at 244a.)

## II. DISCUSSION

### A. *The Parties' Arguments*

The Department argues the trial court erred and/or abused its discretion in granting Manna reconsideration. According to the Department, Manna was represented by counsel at the initial hearing, had the opportunity to present evidence, and did not allege any new or relevant evidence that had been unavailable. Instead, Manna claimed only to have additional evidence that would be helpful and had not been presented earlier, but this does not meet the standard, the Department argues, of granting reconsideration. (Department's Brief (Br.) at 8 (citing *Hydro-Flex, Inc. v. Alter Bolt Co., Inc.*, 296 A.2d 874, 877 (Pa. Super. 1972)).) For this reason, the Department asserts Manna's additional claims were barred by res judicata, and the trial court abused its discretion in granting reconsideration. The Department also contends that Manna, as the Station's owner, was strictly liable for any violation occurring at the Station regardless of whether she was aware of the violation under the Department's regulation at 67 Pa. Code § 177.421.[4] (Department's Br. at 11

---

[4] This regulation provides, in relevant part:

(a) [i]t is the responsibility of the owner of an emission inspection station to:

. . . .

   (6) [a]ssume full responsibility, with or without actual knowledge, for:

   (i) Every emission inspection conducted at the emission inspection station.
   (ii) Every emission inspection waiver delivered by a certified repair technician at the emission inspection station.
   (iii) Every certificate of emission inspection issued to the emission inspection station.

**(Footnote continued on next page…)**

8

(citing *Dep't of Transp., Bureau of Traffic Safety v. Stahl*, 460 A.2d 1223 (Pa. Cmwlth. 1983)).)

Manna responds, tracking the trial court's reasoning, that the reconsideration motion asserted multiple reasons for reconsideration, not all of which are addressed by the Department, including those relating to the violation of due process due to the lack of notice of the details of the violations in the Suspension Order, which were not actually provided until the 1925(b) Statement. Manna asserts that the new evidence that had been previously unavailable was introduced that confirmed the suspicion that the analyzers were prone to giving mismatches. Manna further offered evidence that the new analyzers hold the requisite information for a year, not just 45 days as the analyzer at issue did. Manna asserts that, notwithstanding knowing of the new evidence, the Department failed to respond to that evidence. Further, Manna maintains that the Department did not comply with its own regulation at 67 Pa. Code § 177.651 because notice of the violations was not given in March 2019, at the Department's hearing thereon.

As to the merits of the suspension, Manna notes that the Department bore the burden of proving the violations by a preponderance of the evidence and that the trial court had the authority, after taking additional evidence and making different findings of fact, which it did here, to alter any penalty imposed by the Department. Manna asserts the trial court's holding here is supported by *Strickland* and other

---

(iv) Every violation of the Vehicle Code or this chapter related to emission inspections committed by an employee of the emission inspection station.
(v) Maintaining an adequate supply of current certificates of emission inspection and inserts for issuance.

67 Pa. Code § 177.421(a)(6). The Department also cites the Department's regulation at 67 Pa. Code § 175.29, (Department's Br. at 11), but that provision does not apply to emissions inspection stations and the certificate suspended here related to the Station's Emissions Certificate.

9

cases because the trial court made its own findings of fact. Manna further argues the Department never addressed the asserted due process challenges to the suspension and did not present evidence at the second hearing demonstrating that the analyzer at issue was audited to confirm the violations, particularly where evidence was presented that this type of analyzer gave mismatches. Absent a response to the due process challenge and the unchallenged evidence of mismatches, Manna argues, it would have been improper for the trial court to have upheld the suspension.[5]

*B. Reconsideration*

"A trial court always has the authority to reconsider its own judgment. The question of whether or not to exercise that authority is left to the sound discretion of the trial court." *Moore v. Moore*, 634 A.2d 163, 167 (Pa. 1993) (citing Pennsylvania Rule of Appellate Procedure 1701(b)(3), Pa.R.A.P. 1701(b)(3)[6]; *see also Linder v. City of Chester*, 78 A.3d 694, 697 n.4 (Pa. Cmwlth. 2013). Motions for reconsideration must be filed within 30 days of the order of which review is sought. *Moore*, 634 A.2d at 166. "Since a motion for reconsideration is addressed to the sound discretion of the trial court, the trial court is obviously in the best position to decide if additional testimony, briefs[,] or argument are necessary to the court in reassessing its original order." *Id.* at 167. Absent the trial court's abuse of discretion or error of law, we will not disturb the trial court's decision on a motion for reconsideration. *Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1194 (Pa. Cmwlth. 2015). "An abuse of discretion is more than just an error in judgment[,] and, on

---

[5] Neither party addresses the trial court's position that the 1925(b) Statement was so deficient that all of the issues it wanted to raise were waived. Based on our review of the 1925(b) Statement, we do not find it so deficient as to warrant the harsh result of waiver.

[6] Pa.R.A.P. 1701(b)(3) authorizes trial court to, after an appeal is taken, "[g]rant reconsideration of the order which is the subject of the appeal or petition[.]"

10

appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996).

Similarly, "[t]he general rule is that a court may, in its discretion, reopen [a] case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court[.]" *In re J.E.F.*, 409 A.2d 1165, 1166 (Pa. 1979) (quotations and citation omitted). "[I]t [is] proper to reopen a case to allow the introduction of additional evidence where the evidence has been omitted by accident, inadvertence, or even because of mistake as to its necessity . . . , but not where the omission is intentional." *Id.* (citations omitted). "[A] case may be reopened where it is desirable that further testimony be taken in the interest of a more accurate adjudication . . . and where an honest purpose would be justly served without unfair disadvantage[.]" *Id.* (citations omitted); *see also Bretz v. Cent. Bucks Sch. Dist.*, 86 A.3d 306, 314-15 (Pa. Cmwlth. 2014). Where the request to consider additional evidence occurs after the issuance of an adjudication, the inquiry focuses on "whether 'that evidence (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) is not for the purposes of impeachment; (5) and must be likely to compel a different result.'" *Leung on Behalf of House of Lee, Inc. v. Pa. Pub. Util. Comm'n*, 582 A.2d 719, 721 (Pa. Cmwlth. 1990) (quoting *Hydro-Flex, Inc.*, 296 A.2d at 877).

Here, it is undisputed that Manna filed the motion for reconsideration within 30 days of the trial court's original order denying the appeal. In that motion, Manna asserted multiple bases for the trial court to reconsider its prior decision and for the introduction of additional evidence. (R.R. at 77a-84a.) In particular, Manna asserted

11

alleged due process violations that became more apparent after QAO's testimony regarding what was presented and not presented to Manna, what the Department retained following the audit rather than returned to Manna, and how the inspection should have occurred and could not, according to Manna, given the limitations of the analyzer at issue to hold information. (*Id.* at 78a-82a.) Manna also asserted she had evidence, unavailable at the time of the hearing, that supported the high possibility that the alleged mismatches were the result of a faulty analyzer, not any action by a Station employee. (*Id.* at 82a-84a.)

The trial court, acting within its sound discretion, found that Manna had presented sufficient bases for granting reconsideration, citing both the due process issues raised and the new evidence that could potentially compel a different result. As both the trial court and Manna point out, the Department did not challenge the due process bases for the trial court's grant of reconsideration in its 1925(b) Statement or in its appellate brief; thus, any argument that this basis was insufficient for granting reconsideration is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *In re Tax Claim Bureau of Lehigh Cnty. 2012 Jud. Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue.").

Instead, the Department focuses on Manna's assertion of newly discovered evidence, primarily a cell phone video showing an analyzer giving a mismatch, that Manna asserted was unavailable at the time of the hearing. The Department maintains the video, which Manna testified could not be presented because the cell phone was damaged and no technician was available to fix due to Covid-19 until

after the hearing, (R.R. at 114a, 121a-23a), was nonetheless available had Manna exercised due diligence. The trial court found Manna credible and granted reconsideration, effectively concluding Manna's actions were sufficiently diligent. Manna also asserted that additional evidence that could have aided with her defense was withheld by the Department, which only came to light during the QAO's testimony. (*Id.* at 119a-20a.) The trial court indicated, during argument on the motion for reconsideration, that its own review of the QAO's testimony revealed that the court had misinterpreted that testimony when it denied Manna's appeal and it was also granting reconsideration based on its own mistake. (*Id.* at 140a-44a.) The trial court further observed, in its Pa.R.A.P. 1925(a) Opinion, that Manna's motion for reconsideration referenced multiple claims of new evidence, and the Department was aware of those claims and did not address the issue beyond the phone claim. (*Id.* at 236a-37a.)

Reviewing the record and the trial court's reasoning, we will not disturb the trial court's exercise of its sound discretion to grant reconsideration. *Belleville*, 118 A.3d at 1194. The trial court was "in the best position to decide if additional testimony, briefs[,] or argument [were] necessary to the court in reassessing its original order." *Moore*, 634 A.2d at 167. We discern nothing in the record that reflects that the trial court exercised its discretion in a manner that was manifestly unreasonable or was the result of the court's bias, prejudice, partiality, or ill-will, and, therefore, there was no abuse of discretion. *Smith*, 673 A.2d at 895. Accordingly, this is not a basis upon which to reverse the trial court's February 6, 2023 Order.

We now turn to the Department's assertion that the trial court erred in sustaining Manna's appeal and reinstating the Emissions Certificate.

13

*C. The Suspension of the Emissions Certificate*

The Court's "review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy*, 7 A.3d at 350 (citation omitted). "[S]ubstantial evidence is [defined as] 'relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached.'" *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa. Cmwlth. 2009) (citation omitted). If the record evidence "is adequate to support the finding found by the trial court, as fact finder, [] [the Court is] precluded from overturning th[e] finding and must affirm." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). The Court must review the record "evidence in a light most favorable to . . . the prevailing party in the trial court." *Sillah v. Dep't of Transp.* (Pa. Cmwlth., No. 1311 C.D. 2016, filed Jan. 16, 2018), slip op. at 10 n.15[7] (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)). Evidentiary weight determinations are "solely within the province of the trial court." *Id.* (citation omitted). Likewise, "witness credibility [lies] solely within the province of the trial court." *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003). "In cases involving alleged violations of the [Vehicle] Code and the regulations interpreting the same, [the Department] has the burden of proving such violations by a preponderance of the evidence." *Firestone Tire & Serv.*

---

[7] Unreported panel decisions may be cited for their persuasive, rather than binding, value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

*Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005) (citation omitted).

The Department argues the trial court erred in granting the appeal because, under the Vehicle Code, Manna, as the Station's owner, was responsible for any violation that occurred at the Station. However, as in the other cases involving these parties, the trial court found that the Department's Suspension Order in this matter fell short of due process requirements. *See Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 516 & 517 C.D. 2022, filed Sept. 20, 2024), slip op. at 10-12 (*Manna I*); *Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 993 & 994 C.D. 2022, filed Oct. 7, 2024), slip op. at 12 (*Manna II*); *Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 785 & 786 C.D. 2022, filed Oct. 22, 2024), slip op. at 13-14 (*Manna III*); *Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 1057 & 1058 C.D. 2022, filed Nov. 14, 2024), slip op. at 15-16 (*Manna IV*); and *Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 1059, 1060, 1061, & 1062 C.D. 2022, filed Nov. 14, 2024), slip op. at 8 (*Manna V*). Specifically,

> [a]dequate notice for procedural due process requires at a minimum that the notice contain a sufficient listing and explanation of the charges against an individual. *Dunn* . . . [,] 819 A.2[d] 189 . . . , citing *Gombach v. Dep*[*'t*] *of State, Bureau of Comm*[*'ns*]*, Elections & Legis*[.]*,* 692 A.2d 1129 (Pa. Cmwlth. 1997). At the very least, the notice must have a "sufficient **listing and explanation** of the charges against an individual." [] *Id.* Pursuant to the holding in *Walker v. Department of Transportation*[*, Bureau of Motor Vehicles* (Pa. Cmwlth., No. 771 C.D. 2018, filed April 30, 2019),] sufficient notice requires including the date, time, and location of the conduct, **the specific section and subsection of the regulation violated**, and a summary of facts sufficient to inform the licensee of the nature of the conduct forming the basis for the violation.

*Manna IV*, slip op. at 16 (citation omitted) (emphasis in original).

Here, the Suspension Order cited Section 4724 of the Vehicle Code, 75 Pa.C.S. § 4724,[8] which simply authorizes the Department to issue suspensions or regulations that set forth penalties, and not any substantive provision of the Vehicle Code or the Department's regulations. (R.R. at 10a-11a.) Nor did the audit report attached to and referenced in the Suspension Order cite to a Vehicle Code provision or regulation that was violated. (*Id.* at 89a.) The Department does not explain why the trial court's finding of a due process violation based on these defects was in error. Accordingly, it has not provided a reason for us to depart from our precedent set forth in *Manna I-V* that the Department's failure to cite the specific section and subsection of the substantive Vehicle Code section or regulation violated is insufficient to comport with due process.[9]

---

[8] Section 4724(a) provides:

The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. A schedule of all penalties, points and suspension may be established by the [D]epartment by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

75 Pa.C.S. § 4724(a).

[9] We note that, even if we were to address the Department's arguments, we would still affirm. The trial court made findings of fact that differed from the Department's, including that the Department had not met its burden of proof because it was more likely than not that the alleged mismatches were the result of the faulty analyzer. (R.R. at 241a.) Having made different findings of fact and conclusions of law, the trial court was authorized to alter the penalties imposed by the **(Footnote continued on next page…)**

16

## III. CONCLUSION

Based upon the foregoing, we affirm the trial court's February 6, 2023 Order sustaining Manna's appeal and rescinding the suspension of the Emissions Certificate.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

Department. *Dep't of Transp., Bureau of Traffic Safety v. Kobaly*, 384 A.2d 1213, 1215 (Pa. 1978); *McCarthy*, 7 A.3d at 353-54.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kedecia Manna, d/b/a 9th and
Lloyd Inspections

          v.

Commonwealth of Pennsylvania,
Department of Transportation,
Bureau of Motor Vehicles,
          Appellant

:
:
:
:
:
:
:
:
:
:
:

No. 230 C.D. 2023

## O R D E R

**NOW**, November 21, 2024, the Order of the Court of Common Pleas of Delaware County, entered in the above-captioned matter, is hereby **AFFIRMED**. The Motion for Leave to File Praecipe to Withdraw Appeal, which was opposed, is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** President Judge